JEFFRY K. FINER
West 35 Main • Suite 300
Spokane, WA 99201
(509) 981-8960

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) NO.  CR 11-00107-019 & |
| Plaintiff, | ) CR 12-00017-001 |
| | ) |
| vs. | ) SENTENCING MEMORANDUM |
| | ) |
| SANDRA IRENE DUFFY | ) |
| | ) |
| Defendant. | ) |

Defendant Sandra Duffy, thorugh her counsel of record Jeffry K. Finer, submits the following in support of her sentencing hearing.

I.  **Procedural Background**

On July 19, 2011, the grand jury indicted Ms. Duffy along with more than a dozen alleged co-conspirators for a group of controlled substance offenses occurring in the Eastern District of Washington. Ms. Duffy was charged only with Conspiracy (Count 1). On November 16, 2011, this indictment was superseded and Ms. Duffy was included in the Conspiracy and a single count of Possession with Intent to Distribute 50 Grams or More

of Actual Methamphetamine (Counts 1 and 11). CR 11-107-019.

On February 7, 2012, the grand jury issued an indictment against Ms. Duffy for Escape based upon her failure to return from a medical furlough while in the custody of her attorney. CR 12-017-001.

On 2012, Duffy entered guilty pleas to Count 11 of the superseding indictment in CR 11-107 and to the one count of Escape in CR 12-0017. This plea was submitted under Fed. Crim. R. Pro. 11(c)(1)(C), with an agreed sentencing range from 160 to 262 months — a substantial variance from the Guideline range identified in the PSIR (262 to 327 months).

## II.  Factual Background

The offense conduct is accurately set forth in the PSIR from ¶ 32 to ¶ 51. This memorandum notes two items in particular.

1. Ms Duffy immediately acknowledged to the arresting officers her involvement with her supplier, a man named Heath Wisdom. (PSIR ¶ 37). The first interview occurred at the arrest scene.

2. Ms. Duffy then gave a more detailed recorded interview after transport to the Wenatchee Police Department.

It is important to note that Ms. Duffy did not seek counsel prior to either interview. Despite her significant criminal history (11 points, not including numerous un-scored charges and old offenses) and her evident

experience with the criminal justice process, she simply gave up all her information without seeking counsel or compensation (i.e., bargaining). Just as significant, when Ms. Duffy was giving the arresting officers the story of Heath Wisdom, she was unaware that federal authorities had been using Mr. Wisdom for months as a confidential informant in an advanced investigation of a wide-spread drug conspiracy. She was also unaware that the Federal authorities already knew that Mr. Wisdom, a key confidential source in its investigation, was separately dealing drugs even while working for the government. For reasons protected by valid prosecutorial discretion, the government was not yet ready to put an end to Mr. Wisdom's double-cross by the time he recruited Ms. Duffy.[1]

The upshot of Ms. Duffy's disclosures on the day of her arrest was (1) she had no bargaining position, having given up her useful information and inculpated herself before she met with counsel and (2) the federal authorities already knew that Mr. Widsom was staging an elaborate double-cross. In

---

[1] The Defendant does not allege that the government was aware of her recruitment, nor that she was entrapped or that that the government was in any way responsible for her recuitment. There is no evidence of government misconduct. Mr. Wisdom's double-cross was his own idea and the government's timing in stopping him a matter solely within its discretion.

effect, her willingness to cooperate was sincere and included accurate disclosures but ultimately was of no value to law enforcement.

During the pretrial phase of CR 11-107, Ms. Duffy was made aware of her sentencing exposure. She plainly qualified as a Career Offender and she plainly had nothing of value to offer in exchange for her cooperation. She was advised that she faced a life sentence. Although she was aware that her counsel was attempting to negotiate a plea for her, she was not advised of the status of the negotiations as, according to her original counsel, the terms were not sufficiently solid for him to provide her with any specifics.

Facing a life sentence, Ms. Duffy concocted an escape plan based upon an unfeigned but likely non-serious medical condition. The escape was intended to get her to Wenatchee where her daughter had recently given birth to her first granddaughter. (PSIR ¶ 56). Although she did elude immediate capture, her plan was flawed and she spent miserable hours in the cold without proper clothing or money. She finally contacted her family, indicating she wanted to turn herself in.

### III.   Legal Authority

The Ninth Circuit has settled upon a process by which the court should complete the sentencing procedure in light of *United States v. Booker*'s remedial regime, under which the Guidelines are no longer mandatory.

*United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc); *United States v. Booker*, 543 U.S. 220 (2005). The Court noted that the decisions of *Rita*, *Gall*, and *Kimbrough* supersede how the courts of the Ninth Circuit have approached the sentencing process in light of *Booker*. *Carty*, 520 F.3d at 91; *Rita v. United States*, 551 U.S. 338, 350-52 (2007); *Gall v. United States*, 552 U.S. 38, 48-50 (2007); *Kimbrough v. United States*, 552 U.S. 85, 100-102 (2007).

The Court further noted that all sentencing proceedings should start by determining the applicable Guideline range. *See Carty*, 520 F.3d 984. The Guidelines are the "starting point and the initial benchmark." *Id.* at 991, (citing *Kimbrough*, 552 U.S. at 100-02). The Guidelines are to be kept in mind throughout the process. *Gall*, 552 U.S. 48-51. The parties should be given a chance to argue for a sentence each believes is appropriate. *Carty*, 520 F.3d at 991. The district court may not presume the Guideline range is reasonable. *Id.* The district court should then consider the 18 U.S.C. § 3553(a) factors to decide if they support the sentence suggested by the parties. The statute contains an overarching provision instructing the district courts to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing, including:

    to reflect the seriousness of the offense … promote

respect for the law … provide just punishment for the offense … afford adequate deterrence to criminal conduct … [and] protect the public from further crimes of the defendant.

*Kimbrough*, 552 U.S. 101 (citing 18 U.S.C. § 3553(a)).

Several factors place Duffy's case outside these Guidelines, and warrant a variance from the standard sentencing range. These factors include the matters set forth above in the recitation of the offenses as well as the Defendant's long term psychological issues.

**A.      Advisory Sentencing Guideline Range.**

The PSIR accurately set forth the Guideline Range, with an Adjusted Offense Level of 31 and Criminal History Score of 11 (Category V). (PSIR ¶ 76; ¶ 214). This range is further increased by Ms. Duffy's qualification for Career Offender status, resulting in a final score of 34 with history Category VI. (PSIR ¶ 77, 80). The putative range, therefore, is 262 to 327 months. (PSIR ¶ 281). As set forth below, and in view of the 11(c)(1)(C) plea agreement's range of 150 to 262, this range is too severe.

**B.      After a review of the required factors in addition to the characteristics of Defendant, a 150-month sentence is justified under 18 U.S.C. § 3553(a).**

The Court must consider the following factors under 18 U.S.C § 3553(a)

when imposing a sentence:

1) the nature and circumstances of the offense and the history and characteristics of the defendant;

2) the need for the sentence imposed –

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) the kinds of sentences available

4) the advisory guideline range;

5) any pertinent policy statements issued by the Sentencing Commission;

6) the need to avoid unwarranted disparities;

7) the need to provide restitution.

Each factor is next addressed in order.

**(1)** **The nature and circumstances of the offense and the history and characteristics of Ms. Duffy show cause for a sentence of 150 months.**

There are no indications that Duffy was a leader or an organizer of the

conduct that she is charged with. Nor is she involved in any gang activity. She became involved with Heath Wisdom on a social level when he offered to sell her a vehicle. She purchased it and, when payments became difficult, Mr. Wisdom offered to let her pay it off by selling his drugs.

Ms. Duffy does not claim she was coerced, nor entrapped. She was familiar with drug distribution schemes and while she did not intend to return to this lifestyle after her release in 2010, her one-year supervision in Wenatchee simply made it too easy to slip through the net. She agreed to sell for Mr. Wisdom. It is nevertheless worth noting that had her supervision been in Spokane — or longer than a year — she would have been a good candidate for the STEP program and with the proper medical care and supervision may have succeeded. Absent sustained support Ms. Duffy was easy prey. Given her profound chemical dependency and addiction profile, and her being readily manipulated, Mr. Wisdom quickly brought her into his scheme.

She has expressed a strong desire to become involved in the United States Bureau of Prisons" Residential Drug Abuse Treatment Program. The PSIR recommended her entry into the program. She is also aware that her next supervised release will be far more intensive, and she will be far more likely able to abide by her conditions.

> **(2)   A 150-month sentence will result in Ms. Duffy's release at age 58 or 59; it meet the requirements found in 18 U.S.C. § 3553(a).**

*The seriousness of the crime will be reflected by a 150-month sentence.*

Duffy not only admits to and regrets committing the charges against her, but she also fully comprehends the severity of her mistakes.

*The need for the sentence imposed to afford adequate deterrence, to protect the public from further crimes, and to provide Ms. Duffy with the needed education, vocational training, medical care, or other correctional treatment in the most effective manner.*

A 150-month sentence would adequately protect the public from any further crimes. Ms. Duffy 48 years old and has already served 17 months pretrial. She has a history of mental health issues. She took responsibility for her own actions when initially arrested, but made an irrational decision when she believed she faced a life sentence. All these decisions — her drug use, criminal activity and the escape — are a reflection of her persistent and essentially untreated bi-polar disorder.

After a 150-month sentence, Duffy will be 49 years-old upon release (depending on her receiving the 500 hour program and assuming good time; a bare calculation results in a release at age 51).

Considering the fact that she never graduated from high school, the 150-

month sentence will give Ms. Duffy an opportunity to further her training and education beyond her current GED. If Ms. Duffy completes her prison sentence at age 50, she will still be young enough to participate in the life of her granddaughter and daughter, as well as obtain employment. If she obtains additional education or vocational training while incarcerated, she will be well-qualified for employment and have an opportunity to redress her debt to the community and to her family.

**(3) The Court must consider the kinds of sentences available for the specific case at hand and a 150-month sentence is a viable option.**

"[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Rita v. United States*, 551 U.S. 338, 352 (2007). Thus, this Court has an obligation to make an independent assessment of what sentence meets the requirements of 18 U.S.C. § 3552(a) for each specific case, separate from any recommendation made by the U.S. Sentencing Commission. *Id.* at 2463-65. Therefore, this Court retains the discretion to impose any sentence it deems appropriate. *Id.*

**(4) The advisory Sentencing Guidelines must be considered by the Court.**

Although the sentencing court may not give the sentencing Guidelines a legal presumption, the Guidelines still need to be considered by the Court. Ms. Duffy falls under the sentencing guideline range of 262 to 327 months.

**(5)    The Policy Statements issued by the Sentencing Commission permit a Downward Departure from the Recommended Sentence.**

In this case, the Guidelines do not provide a substantial basis for departure except insofar as her personal background and the way in which she became part of the conspiracy is not within the "heartland" of such cases.

**(6)    A 150-month sentence would not create an unwarranted disparity.**

Ms. Duffy acknowledges the seriousness of her conduct and takes full responsibility. Although she did not provide substantial assistance, she was prepared to do so and in fact gave up truthful information about the government's confidential informant. Others in the conspiracy, admittedly not with Career Offender status, have been given far lower sentences based upon their prompt recognition of wrongdoing and willingness to cooperate. When all the factors from 18 U.S.C § 3553(a) are considered, a 120-month sentence would not create an *unwarranted* disparity.

**(7)    The Need to Provide Restitution is not a relevant factor in this case.**

As stated in the PSR, restitution is not an issue in this case.

**(C) Considering all of the factors, a 120-month sentence is proper.**

When the court determines a sentence, it must consider "the structure and

theory of both relevant individual guidelines and the guidelines taken as a whole." *United States v. Lipman*, 133 F.3d 726, 730 (9th Cir. 1998). Each guideline carves out a "heartland," *Lipman*, 133 F.3d at 730, and "[w]hat falls within the "heartland" of a guideline is . . . within the discretion and special expertise of the district court." *Id.* at 730. "In *Booker*, the Supreme Court stated, "[w]e have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." *United States v. Booker*, 543 U.S. 220, 223 (2005). Although the Guideline ranges must be considered, the sentence may be tailored to consider other relevant concerns. *Id.* at 245. Courts have stated that mitigating factors include a cooperation with the government. *See, e.g.*, *United States v. Dickey*, 924 F.2d 836 (9th Cir. 1991); *United States v. Denardi*, 892 F.2d 269, 270 (3rd Cir. 1989).

The Defendant intends to provide the Court with past and recent medical information in further support of her establishing the role her bipolar disorder has played in her past criminal conduct.

Furthermore, Ms. Duffy's relationship with her family and the level of support given by her immediate family during this difficult time should also be considered. Once Ms. Duffy completes her sentence, she believes she will not return to her family's hometown, Wenatchee, but expects to reside in

Eastern Washington.

## IV. Conclusion

In conclusion, Ms. Duffy respectfully requests the court sentence her to a total of 150 months confinement.

DATED this 30th day of October, 2012.

                              Law Offices of JEFFRY K FINER

                              JEFFRY K. FINER
                              WSBA No. 14610
                              Attorney for Plaintiff

Jeffry K Finer PS
35 W Main Street • Suite 300
Spokane, Washington • 99201
509.464.7611  jeffry@finer-bering.com